# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| BETTY C. FIELDS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV421-020 |
| ETHICON, INC. and JOHNSON & JOHNSON, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This case originated in multi-district litigation in the United States District Court for the Southern District of West Virginia, *In re Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation*, No. 2:12-md-2327 (S.D. W. Va.) (the "Ethicon MDL"). *See* doc. 18 (Amended Short Form Complaint). Plaintiff is one of thousands who allege injury after being implanted with pelvic mesh products designed, manufactured, and sold by defendants. *See generally id.* Her case was transferred to this Court on October 27, 2020. Doc. 73 at 2. She has filed a Motion to Strike Defendants' Non-Retained Experts in Violation of Pretrial Order #320.

Doc. 111. Defendants responded, doc. 116, and Plaintiff replied, doc. 118. Her motion is ripe for disposition.

I.     BACKGROUND

The District Judge presiding over the MDL, Hon. Joseph R. Goodwin, entered Pretrial Order ("PTO") #320, which limited the parties to "no more than five experts per case (exclusive of treating physicians)." Doc. 24 at 4.  In addition to identifying their "Retained Expert Witnesses,"[1] Defendants also identified nine "Non-Retained Experts" as potential witness at trial. *See generally* doc. 111-2.[2]  Plaintiff contends that this designation of nine additional experts violates the PTO's express limitation on the number of experts allowed. Doc. 111 at 3. She argues that the MDL Court and other courts to consider the issue have determined that any expert beyond the express five-expert limitation must be excluded and asks this Court to follow suit. *Id.* at 3-6.

---

[1] Defendants, in addition to identifying five "retained experts," also identified a sixth "alternative retained expert."  Doc. 111-1 at 3.  Plaintiff appears to suggest that Defendants may have violated the PTO by identifying this "alternative" expert, *see* doc. 111 at 2, but insofar as Plaintiff has not requested any specific relief concerning that disclosure, the Court will not address the issue.

[2] Defendants represent that these witnesses are all Ethicon employees or former employees. Doc. 116 at 4-5. Plaintiff disagrees, asserting that two of them were never employed by Ethicon. Doc. 118 at 1-2. Insofar as the witnesses' precise employment status has no bearing on the disposition of this motion, the Court need not resolve this dispute.

2

Defendants disagree. Doc. 116. They first argue that Plaintiff's motion is untimely. *Id.* at 3. Then, they argue that the other courts to consider the PTO's language have excluded their non-retained experts after only a superficial analysis of their arguments, and that this Court should ignore those cases and, in their words, "analyze the issue more fully." *Id.* at 4. In doing so, they urge the Court to consider their inability to properly defend the case without these witnesses, and that the application of this expert witness cap serves to unfairly "punish" Ethicon for having a highly educated workforce with specialized scientific and technical knowledge. *Id.* at 4-6. They compare their non-retained experts to Plaintiff's treating physicians who are, by the express language of the PTO, excluded from the calculation of experts allowed at trial. *Id.* at 6-7. They suggest their non-retained experts are similarly situated to those physicians and "should not be treated differently." *Id.* at 7. Defendants further argue that excluding these witnesses would violate their due process rights, *id.* 7-8, but that permitting them would in no way prejudice Plaintiff, *id.* at 8-9.

## II.   ANALYSIS

Before turning to the merits of the parties' arguments, the Court first addresses the timing of the Plaintiff's motion. As Defendants correctly note, a "motion to strike is not the proper vehicle" for the Plaintiff's argument. Doc. 116 at 1, n.1. Plaintiff's motion is more properly characterized as a motion *in limine*, and construed as such, there is no evidence that it is untimely. Defendants have not cited to any deadline that would preclude the Court from considering Plaintiff's motion. *See* doc. 116 at 3 (referencing a deadline for *Daubert* motions, but no others); *see also* doc. 24 at 3 (providing deadlines for dispositive motions and *Daubert* motions, but not motions *in limine*). Plaintiff is not challenging the substance of the proposed experts' opinions; she is challenging Defendants' attempts to avoid the PTO's expert-witness cap. That challenge is not untimely, and the Court will consider it on its merits.

The express language of the PTO mandates that "**the plaintiffs and each defendant are limited to no more than five experts per case (exclusive of treating physicians).**" Doc. 24 at 4 (emphasis in original); *see also id.* at 3, n.3. In arguing that they should be permitted

4

additional experts, Defendants attempt to draw a distinction between the non-retained status of the disputed experts and their other retained experts. *See, e.g.,* Doc. 116 at 5 ("The opinions of Ethicon's non-retained experts are from hands-on, percipient observations during their employment; they were not formed for the purposes of litigation."). Their argument seeks to read an implied qualifier into the PTO—that it only applies to "retained" experts. Nothing in the plain text of the order supports that interpretation. While the distinction between "retained" and "non-retained" experts might bear upon whether a witness is required to provide a report, *see, e.g., Southard v. State Farm Fire and Cas. Co.*, 2013 WL 209224, at *3 (S.D. Ga. Jan. 17, 2013), it does not bear upon whether the witness is properly considered an "expert." The presiding MDL judge himself has rejected reading such a distinction into the language of the PTO. *See, e.g., Lankston v. Ethicon, Inc.*, 2:12-cv-00755, doc. 148 (S.D.W. Va. Jan. 12, 2017).

In support of her motion, Plaintiff cites not only to decisions from the MDL Court, but also to multiple decisions from district courts around the country which consistently preclude any party from having more than five expert witnesses, whether retained or non-retained. Doc. 111 at 4-6

5

(citing *Sluis v. Ethicon, Inc.*, 529. F. Supp. 3d 1004, 1022-23 (D.S.D. 2021); *Kelly v. Ethicon, Inc.*, 2020 WL 5949225 (N.D. Ia. Oct. 7, 2020); *Wegmann v. Ethicon*, Inc., 2020 WL 5960923 at *6 (E.D. Mo. Oct. 8, 2020)). Defendants urge this Court to blaze a different trail; since they believe that none of the prior orders involved a careful analysis of the specific arguments advanced here, they conclude that a different outcome is warranted. Doc. 116 at 4. Notably, although Defendants urge this Court to ignore the decisions relied upon by Plaintiff, they cite to no cases where a court has accepted their interpretation of the language of the PTO. *See generally* doc. 116. While none of the rulings cited by Plaintiff represent binding authority on this Court, they are highly persuasive, and the Court is not persuaded by the Defendants arguments otherwise.

Defendants argue that their "primary witnesses necessarily will be employees with scientific and medical expertise who formed opinions and acted based on their scientific knowledge during the development and continuing evaluation of the products at issue." Doc. 116 at 4. Therefore, these "experts in their field" must testify based on this scientific or technical knowledge in offering their percipient testimony. *Id.* at 4-5. Without this testimony, defendants contend that they "could not properly

6

defend this case." *Id.* at 6. Contrary to their assertion, defendants are not being "punished" by this limitation on experts. The same as all other parties to this massive litigation, they had to make a strategic choice as to who to name as experts. They made that choice by naming *six* retained experts who may be called to testify at trial. *See* doc. 111-1. Despite this strategic choice, as the District Court for the Northern District of Iowa recognized, "Defendants' employees are not wholly prohibited from testifying." *Kelly*, 2020 WL 5949225, at *6. They may testify as lay witnesses, subject to the constraints of Rule 701 and any evidentiary rulings at trial. They may not, however, testify as experts in excess of the five-expert limit.

Defendants' argument that Ethicon's highly educated employees are akin to plaintiff's treating physicians, and should therefore be excluded from the expert count, misses the mark. *See* doc. 116 at 6-7. According to Defendants, treating physicians, just like the Ethicon employees, "are percipient witnesses to the events relevant to the case, whose testimony is based upon specialized knowledge." *Id.* They argue that, just like these treating physicians, their non-retained experts should be similarly excluded from the expert count. The PTO clearly

establishes the sole category of experts who are not subject to the cap—treating physicians—and does not contemplate any other category of exclusion. Doc. 24 at 4. Presumably, had Judge Goodwin wished to create additional exceptions to his limit, he could have done so. He did not. No matter how "similarly situated" defendants believe their non-retained experts to be, they are not treating physicians and are not excluded from the expert limitation.

Defendants suggest that, since Plaintiff seeks punitive damages based on the alleged actions or inactions of Ethicon's employees, the expert witness cap violates their due process rights. This argument is unconvincing. While Ethicon should be permitted to defend its conduct in response to plaintiff's punitive damages claims, none of the cases cited support the proposition that enforcing a cap on the number of expert witnesses rises to the level of a due process violation. For example, in *Stewart v. U.S. Attorney General*, the Eleventh Circuit recognized that "[t]he deprivation of the ability to present evidence can, in certain circumstances, constitute a due process violation." 776 F. App'x 573, 577 (11th Cir. 2019). However, it went on to find that, in the context of an immigration proceeding, the lower court had acted in its discretion to

limit the testimony of an expert witness, and that there was no due process violation. *Id.* at 577-78.

The District Court in *Kelly* confronted this same argument. As that Court observed, the "presentation of evidence at trial is constrained in many ways" to ensure both parties' due process is protected. 2020 WL 5949225, at *6. "The limitations imposed by Judge Goodwin's order promote" the goals of the Federal Rules of Civil Procedure. *Id.* Moreover, a trial court has "broad discretion to preserve the integrity and purpose of the pretrial order." *Jacobs v. Agency Rent-A-Car, Inc.*, 145 F.3d 1430, 1432 (11th Cir. 1998) (internal citations and quotations omitted). The enforcement of the governing PTO does not violate Defendants' due process rights, particularly where they "can still present a defense and offer rebuttal testimony." *Kelly*, 2020 WL 5949225, *6. The must simply do so within the reasonable limits of the PTO.

Defendants' final argument is that their designation of non-retained experts does not prejudice the plaintiff. Any prejudice or non-prejudice to the plaintiff is irrelevant. The governing PTO limits the number of experts each side may present, with one exception, and Defendants' non-retained experts exceed that limit. Defendants may not

9

present more than five experts at trial, whether those experts be retained or non-retained, regardless of whether their disclosure of additional experts was or was not in bad faith.

### III. CONCLUSION

Construed as a motion *in limine*, plaintiff's motion to exclude defendants' experts in excess of the PTO's express limitations is **GRANTED**. Doc. 111. As noted above, those witnesses' testimony is only excluded to the extent that it is expert testimony, within the meaning of Federal Rule of Evidence 702.

**SO ORDERED**, this 25th day of March, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA