## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| BETTY C. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV421-020 |
| | ) | |
| ETHICON, INC., and | ) | |
| JOHNSON & JOHNSON, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

This case originated in multi-district litigation in the United States District Court for the Southern District of West Virginia, *In re Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation*, MD212-2327 (S.D. W. Va.) (the "MDL"). *See* doc. 18 at 1 (Amended Short Form Complaint). Plaintiff Betty C. Fields is one of thousands who allege injury after being implanted with pelvic mesh products designed, manufactured, and sold by Defendants Ethicon, Inc. and Johnson & Johnson (collectively, "Ethicon"). *See generally id.* Fields alleges that she was injured by "Gynemesh PS", *id.* at 3-4, an Ethicon product primarily used to treat pelvic organ prolapse and stress urinary

1

incontinence ("SUI").  Doc. 74-1 at 4 (First Amended Master Long Form Complaint).

Ethicon seeks to exclude opinions rendered by Fields' case-specific expert Dr. Bernd Klosterhalfen, doc. 140, and two "general experts" identified by the MDL plaintiffs before this case was remanded, Dionysios K. Veronikis, M.D., and Scott Guelcher, Ph.D, doc. 141; *see also* doc. 142 at 1 (clarifying the distinction between case-specific and general experts).  The MDL Court divided the MDL cases into discovery "waves"; Fields' case was grouped in Wave 10.  Doc. 134 at 2.  The two general experts at issue were challenged during various MDL waves prior to Wave 10.  *See id.* at 2-3.  As the waves progressed, MDL parties adopted arguments from prior waves, and added additional argument in support of those challenges.  *Id.*  The MDL Court ruled on some of those challenges, expressly reserved ruling on some challenges, and did not address other challenges.  *Id.*  Fields' case was remanded before the MDL Court issued Wave 10 rulings on the experts at issue.  *Id.* at 3.[1]

---

[1]  The MDL Court remanded MDL plaintiffs' cases from various waves to various transferor district courts, and those district courts have addressed *Daubert* challenges similar or identical to the challenges in Fields' case.  The Court treats those dispositions as persuasive authority.

In order to streamline the Court's disposition of expert challenges not resolved by the MDL Court, Judge Moore[2] provided the following instruction to the parties:

> The Court will permit the parties to each file a single *Daubert* motion of no more than 25 pages covering all issues they contend were reserved or not properly addressed in the MDL Orders. Therefore, the parties should carefully consider the issues they raise in the briefing. The parties **SHALL NOT** raise any arguments already resolved by the MDL Court. Further, the parties **SHALL NOT** raise any arguments which they failed to raise in the MDL. The failure to present these issues raised but undecided in the MDL at this time will result in forfeiture of the argument. The parties must not merely incorporate or reference arguments from prior filings, and any relevant exhibits must be attached to the motion. Given the size of the MDL and the numerous remand proceedings that have already occurred in other courts, the Court believes most unresolved issues have already been litigated in other courts. To the greatest extent possible, the parties must cite to decisions of the MDL court and the remand courts that address the unresolved *Daubert* issues.

Doc. 134 at 5-6. Ethicon subsequently filed a *Daubert* motion challenging Klosterhalfen's testimony, doc. 140, and a *Daubert* motion challenging Veronikis' and Guelcher's testimony, doc. 141. Fields responded to both motions, docs. 143 & 145, and Ethicon replied, docs. 147 & 148. The motions are ripe for disposition.

---

[2] This case has since been reassigned from Judge Moore to Judge Baker. Doc. 151.

## ANALYSIS

### I.      Federal Rule of Evidence 702 Standard

Federal Rule of Evidence 702 compels the Court to act as a "gatekeeper" for expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)). In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592, n.10.

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."

*Frazier*, 387 F.3d at 1260–61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]").    But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015) (quoting *Frazier*, 387 F.3d at 1261).    Courts must also "determine whether [an expert witness's] qualifications and expertise sufficiently 'fit' with the subject matter of the witness's proposed testimony." *End Time Sabbath Worship Ctr., Inc. v. Landmark Am. Ins. Co.*, 2021 WL 4263364, at *2 (M.D. Fla. July 29, 2021) (quoting *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010) (internal quotations omitted)).

As to the second prong, the "reliability criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261.    "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415

F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).  These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field."  *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262.  Above all, the Court must ensure that the expert's testimony "rests on a reliable foundation." *Daubert*, 509 U.S. at 597.  In doing so, it is afforded "considerable leeway." *Frazier*, 387 F.3d at 1262 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S 137, 152 (1999) (internal quotes omitted)).

Lastly, expert testimony must assist the trier of fact. *Frazier*, 387 F.3d at 1262.  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."  *Id.* (citation omitted).  This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260).  "Expert testimony which does

not relate to any issue in the case is not relevant and, ergo, non-helpful."

*Id.* (quoting *Daubert*, 509 U.S. at 591).

## II.   Ethicon's motion to exclude Klosterhalfen's testimony.
##       Doc. 140.

Fields' expert Klosterhalfen is a pathologist with experience studying implanted devices.  Doc. 143 at 1 (citing Klosterhalfen's CV, doc. 143-1).  Ethicon moves to exclude Klosterhalfen's opinions regarding (1) "safer alternative designs" for Gynemesh PS, doc. 140 at 2, and (2) Ethicon's "knowledge, state of mind, and corporate conduct," and "cumulative historic commentary about Ethicon's claimed bad acts", *id.* at 8-9 (capitalization altered).   The Court will address these two categories of challenged opinions in turn.

Klosterhalfen opines that "a safer, feasible alternative product to the Gynemesh PS . . . product[ ]. . . . which use[s] polypropylene mesh, would be to use Pronova, Ethicon's inhouse PVDF[3] material. [sic]"  Doc. 140-1 at 44.  Ethicon argues that this opinion should be excluded because PVDF was not FDA approved, and therefore not an "alternative design"

---

3  "PVDF" is an abbreviation for polyvinylidene fluoride.  *See* doc. 140-1 at 38 n.92.

under Georgia law,[4] when Fields received her implant.  Doc. 140 at 3-5; *see also* doc. 147 at 4.

The Georgia Supreme Court has adopted a "risk-utility analysis . . . to evaluate design defectiveness under a test balancing the risks inherent in a product design against the utility of the product so designed." *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 674 (Ga. 1994).  Under this test, courts consider whether "an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible." *Id.* at 674-75  "Alternative safe design factors include[ ] the feasibility of an alternative design[, and] the availability of an effective substitute for the product which meets the same need but is safer[.]" *Id.* at 675 n.6.

Ethicon urges the Court to adopt the reasoning of courts that have concluded that an alternative is not "available" absent FDA approval, doc. 140 at 3-4 (noting that courts differ on this question), and Fields urges the Court to adopt the reasoning of courts finding that an alternative design opinion is not necessarily inadmissible absent FDA

---

[4]   Neither party disputes that Georgia substantive law applies in this products liability case.  *See Schmidt v. C.R. Bard, Inc.,* 2014 WL 5149175, at *3 (S.D. Ga. Oct. 14, 2014).

approval.  Doc. 143 at 11-14.  This Court recently sided with the " '[m]any other courts—including the MDL court—' [which] have rejected [Ethicon's] argument[ ] that a lack of FDA approval renders a design unfeasible."  *Jones v. Ethicon*, CV421-023, doc. 135 at 66-67 (S.D. Ga. Dec. 6, 2022) (quoting *Dandy v. Ethicon Women's Health & Urology*, 2022 WL 1284735, at *12 (D.N.J. Apr. 29, 2022) (compiling cases)).  As in *Jones*, Ethicon does not cite any Georgia law requiring FDA approval for an alternative to be "feasible."  *Id.* at 67; *see generally* docs. 140 & 147. Further, as the *Dandy* Court noted, "interpreting availability to require an FDA-approved product that implements the proposed alternative design would enable companies to avert liability by merely refraining from seeking FDA approval for designs they know to be safer, which would subvert the purpose underlying design defect law."  2022 WL 1284735, at *12.  The Court declines to exclude Klosterhalfen's opinion on this ground.

Ethicon also challenges Klosterhalfen's "safer alternative" opinion on reliability grounds, asserting that it is not "supported with testing or scientific literature."  Doc. 140 at 5.  It contends that Klosterhalfen justifies his opinion by discussing "various documents and studies

relating to the use of PVDF in [1] sutures and [2] as a potential material for hernia meshes"; however, he only cites "internal Ethicon documents" regarding PVDF's use in pelvic mesh implants like Fields'.  *Id.*

Klosterhalfen provides a detailed discussion of various studies and documents describing the benefits of using PVDF in sutures and hernia mesh, *see* doc. 140-1 at 44-49, and, "based on [his] experience developing meshes", *id.* at 44, opines that PVDF would promote similar benefits in the pelvic mesh context.  *Id.* at 46-47.  Although Ethicon and Fields both cite cases reaching different results on similar arguments,[5] the Court cannot conclude that Klosterhalfen "failed to explain how, from the materials he reviewed and his . . . experience, he reached [his] conclusion."  *In re: 3M Combat Arms Earplug Products Liability*

---

[5]  Ethicon cites *Heinrich v. Ethicon, Inc.*, 2021 WL 2285435, at *3 (D. Nev. June 4, 2021), which excluded an expert's opinion that synthetic low-weight mesh is a superior alternative, when the expert "relied on meshes used in the treatment of hernias and pelvic organ prolapse, not in the treatment of SUI."  *See* doc. 140 at 6 (citing *Heinrich*, 2021 WL 2285435, at *3).  Fields cites *Hosbrook v. Ethicon, Inc.*, 2022 WL 136740, at *5 (S.D. Ohio Jan. 12, 2022), a case with arguably more analogous facts to her case.  *See* doc. 143 at 12.  The *Hosbrook* court held: "Concerning the PVDF mesh, Ethicon contends that the studies this expert cites in support of its use do not address using it in pelvic organ prolapse or even the pelvic floor generally and therefore it should be excluded. . . . The Court finds that Defendants' argument concerning whether PVDF is a safer alternative design is a subject of cross-examination and goes to its weight and not its admissibility."  2022 WL 136740, at *4-5.

*Litigation*, 2021 WL 2028682, at *4 (N.D. Fla. May 11, 2021); *see also Banta Properties, Inc. v. Arch Specialty Ins. Co.*, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) ("An expert's method need not be perfect, nor need he apply it perfectly."). Ethicon emphasizes the existence of a distinction between PVDF's use in the suture and hernia mesh contexts and the pelvic mesh context in both its *Daubert* motion and reply, docs. 140 & 147, but does not explain why the gap between those contexts mandates wholesale exclusion of Klosterhalfen's "safer alternative" opinion. *See Bendik v. USAA Cas. Ins. Co.*, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019) ("In general, excluding expert testimony is viewed as a 'drastic' sanction[.]"). To the extent Ethicon contends that the gap weakens his opinion, it may address the issue on cross examination. *See Hosbrook*, 2022 WL 136740, at *5.[6]

---

[6] Ethicon argues that Klosterhalfen's opinion is unreliable because he "only cite[s] to internal Ethicon documents" to support it. Doc. 140 at 5; *see also id.* at 6 (citing *Willet v. Johnson & Johnson*, 465 F. Supp. 3d 895, 901 (S.D. Iowa 2020) ("Dr. Zipper's belief that Prosima+M was . . . safer than Prosima is based on Ethicon's internal documents[.] . . . Such a basis for an opinion satisfies none of the relevant considerations for determining the reliability of an expert's opinion about an alternative design.")). As discussed, however, Klosterhalfen cites more than just "anecdotal evidence" from "internal documents" in support of his opinion. *Willet*, 465 F. Supp. 3d at 901.

Finally, Ethicon contends that Klosterhalfen's "safer alternative" opinion would be unhelpful to a jury.  Doc. 140 at 7.  It argues that the testimony does not fit the facts of the case because "[Fields] has no case-specific expert evidence that a PVDF alternative design would have prevented [her] injuries[.]"  *Id.*  As Fields correctly notes, however, under Georgia law, "where evidence of a safer alternative design is introduced, that evidence bears on the issue of whether the design of the device is defective, *i.e.,* whether the risks of the device's design outweigh its benefits."  Doc. 143 at 14 (citing *Schmidt*, 2014 WL 5149175, at *4).  Ethicon's reply merely reiterates its argument that Fields has not presented evidence of a safer alternative design, doc. 147 at 2-3, and adds that "even if Plaintiff is not required to present proof of safer alternative design under Georgia law, if she chooses to do so, she must demonstrate that the alternative offered was feasible and appropriate, and that Klosterhalfen's opinions are relevant and reliable[.]"  *Id.* at 3.  Given the relevance of alternative designs in the risk-utility analysis, and given the Court's findings regarding the feasibility of PVDF and the reliability of Klosterhalfen's methodology for *Daubert* gatekeeping purposes, the Court declines to exclude the "safer alternative" opinion on this ground.

Ethicon also challenges Klosterhalfen's opinions "about Ethicon's state of mind", and opinions which "involve nothing more than cumulative historic commentary about Ethicon's claimed bad acts." Doc. 140 at 8-9. As Fields correctly notes, however, doc. 143 at 19, Ethicon does not point to any specific opinion which it contends should be excluded. *See* doc. 140 at 9 (broadly stating that "many of Klosterhalfen's opinions" are inadmissible "cumulative historic commentary", and requesting exclusion of his "[s]imilar opinions and testimony" without citing specific opinions). Ethicon's reply brief is similarly vague. *See* doc. 147 at 7 (broadly seeking exclusion of "any opinions" related to Ethicon's state of mind or "cumulative historic commentary"). Accordingly, the Court declines to determine whether any of Klosterhalfen's specific opinions should be excluded on these grounds. *See Hannah v. Armor Corr. Health Servs., Inc.*, 2021 WL 1777881, at *6 (M.D. Fla. Mar. 8, 2021) ("The Court is mindful that the exclusion of expert testimony is an *exception*, not the rule, for evidentiary admissions under *Daubert*, *Kumho Tire*, and the Federal Rules of Evidence. . . . Moreover, the Court need not develop . . . conclusory arguments[.]") (emphasis in original) (citations

omitted).[7]   To the extent Ethicon asks the Court to exclude any of Klosterhalfen's specific opinions on these grounds, its motion is **DENIED**.  Doc. 140.

### III.   Ethicon's Motion to Exclude Veronikis' and Guelcher's testimony.  Doc. 141.

Ethicon's second *Daubert* motion challenges opinions rendered by Fields' expert Scott Guelcher, Ph.D.  Doc. 141 at 8.  In Fields' response, however, she clarifies that she "does not intend to call Dr. Guelcher and has filed her Notice of Withdrawal of Dr. Guelcher in this case."  Doc. 145 at 1 (citing doc. 142 (Notice of Withdrawal)).  Ethicon's motion seeking to exclude Guelcher's testimony is **DISMISSED** as moot.  Doc. 141, in part.

Ethicon also challenges opinions rendered by Fields' expert Dionysios Veronikis, M.D., a urogynecologist with board certifications in Female Pelvic Medicine and Reconstructive Surgery and Obstetrics/Gynecology.  Doc. 141-1 at 2.  Specifically, it asks the Court to

---

[7]  *See also Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001) (quoting *Kumho*, 526 U.S. at 149) ("To trigger a *Daubert* inquiry, an expert's testimony, or its 'factual basis, data, principles, methods, or their application,' must be 'called sufficiently into question.' "); *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1270 (D.N.M. 2013) ("Since Defendant fails to cite specific, persuasive authority for most of these bases [for exclusion], however, and the Court need not develop Defendant's conclusory arguments or address arguments unsupported by authority, the Court declines to address most of these points.").

exclude his testimony regarding (1) Gynemesh PS's instructions for use ("IFU"), doc. 141 at 2, and (2) alternative mesh designs, *id.* at 4. The Court will address these two categories of challenged testimony in turn.

Veronikis' report lists numerous warnings that he opines should have been included on Gynemesh PS's IFU, *see* doc. 141-1 at 5-17, and Ethicon challenges this opinion on "qualifications" grounds. Doc. 141 at 2-4. Fields contends that the Court should not consider this challenge because Ethicon failed to raise it in the MDL Court. Doc. 145 at 3-4. Ethicon, however, challenged Veronikis' qualifications to render this opinion in Wave 3 of the MDL, *see* doc. 78-6 at 2-4, and adopted its Wave 3 briefing in Wave 10 (Fields' wave) before this case was remanded. Doc. 78-9 at 1. Since Fields does not contend that the MDL Court already disposed of this challenge, *see* doc. 145 at 3-4; the Court must address it here. *See also* doc. 112-4 at 1-16 (the MDL Court's Order, adopted in Wave 3, does not appear to resolve this challenge).

In the context of a challenge to a different expert, the MDL Court explained:

> While an expert who is a urologist may testify about the specific risks of implanting mesh and whether those risks appeared on the relevant IFU, the same expert must possess additional expertise to offer expert testimony about what information should or should not be included in an IFU.

*In re: Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2016 WL 4500767, at *4 (S.D.W. Va. Aug. 26, 2016). Ethicon argues that the Court should exclude Veronikis' IFU opinions because he does not possess the requisite "additional expertise." Doc. 141 at 3. Fields contends that he possesses the "additional expertise" based on his extensive urogynecology experience, and his experience writing IFUs for surgical instruments he designed. Doc. 145 at 5-6.

Although the Court agrees that Veronikis has extensive experience treating patients as a urogynecologist, "courts have rejected such reliance on an expert's experience as a physician to provide the 'additional expertise' regarding what should be in an IFU document." *Burris v. Ethicon, Inc.*, 2021 WL 3190747, at *12 (N.D. Ohio July 28, 2021) (compiling cases). Additionally, Veronikis' deposition testimony

indicates that although he "wrote" IFUs for products he designed, he did not actually generate the content of those IFUs:

> Q: And did you write the warnings in the IFU?
>
> A: Yes.
>
> . . .
>
> Q: Okay. Did anyone help you write the warnings?
>
> A: They gave me a handout on what it should include, and I wrote it.

Doc. 141-2 at 43; *see also* doc. 145 at 5-6 (Fields only cites this testimony to support her argument that Veronikis "wrote" IFUs after Ethicon raised the issue in its *Daubert* motion). Fields has not explained why copying text provided by a "handout" is relevant experience in this context. Accordingly, the Court must determine the permissible scope of his testimony given his extensive experience as a urogynecologist.

The parties imprecisely frame Veronikis' challenged testimony as, e.g., "what should be included in an IFU for an implantable medical device." Doc. 148 at 4; *see also* doc. 145 at 3 (Fields defends Veronikis' opinions "about what should be included in an IFU"). Multiple courts cited in the parties' briefing, including transferor courts in this MDL, have articulated a distinction between different "IFU adequacy" opinions

in similar contexts.  Although an expert relying solely on his experience as a urogynecologist may be qualified to opine on the risks associated with a product or procedure, and whether an IFU adequately communicates those risks, he "may not offer opinions as to what [a] [d]efendant was, for example, 'obligated' to include in its IFUs", *Godreau-Rivera v. Coloplast Corp.*, 598 F. Supp. 3d 196, 211 (D. Del. 2022), or "whether an IFU complies with regulatory standards." *Arevalo v. Coloplast Corp.*, 2020 WL 3958505, at *5 (N.D. Fla. July 7, 2020).[8]  The Court finds this authority persuasive.  To the extent Veronikis seeks to testify that Ethicon was, *e.g.*, "required" or "obligated" to include certain information in the IFU, that testimony is **EXCLUDED**.  However, he

---

[8] *See also Wiltgen v. Ethicon, Inc.*, 2017 WL 4467455, at *8 (N.D. Ill. Oct. 6, 2017) ("The Court . . . limits Dr. Elliott's testimony to an evaluation of the . . . IFU based on his knowledge of and clinical experience with the risks of SUI products and not on FDA [or other] requirements or regulations.  [Cit.]  He may testify regarding the IFU from a physician's viewpoint, not from a regulatory basis. The additional expertise that Defendants claim is necessary for an expert to opine on what information should or should not be included in an IFU is only required of the urogynecologist who holds himself or herself out to be an expert in the development of warning labels and wishes to give related testimony.  [Cit.]" (internal quotations and citations omitted)); *Wise v. C.R. Bard, Inc.*, 2015 WL 521202, at *14 (S.D.W. Va. Feb. 7, 2015) ("Dr. Raybon has no demonstrated experience in the requirements for product labeling, and as such, he may not testify as to what the Avaulta label should or should not have included under the law.  However, as an experienced urogynecologist, he may testify about the risks he perceives that the Avaulta poses to patients and then opine that the Avaulta IFU did not convey those risks.").

may opine on the risks associated with Gynemesh PS based on his experience as a urogynecologist, and opine whether the IFU adequately communicated those risks.

Fields cites cases permitting experts to testify about IFU warnings' "adequacy", "completeness", and "accuracy" in similar contexts. *See* doc. 145 at 8-10. Although the parties do not discuss the issue in detail, the Court cannot conclude that those cases are inconsistent with its approach described above. Those cases apply reasoning consistent with the Southern District of West Virginia's approach in *Huskey v. Ethicon, Inc.*,[9] which explained:

> Ethicon first challenges Dr. Blaivas's qualifications to give these [IFU adequacy] opinions because Ethicon argues that Dr. Blaivas is not an expert on product warnings. But Dr. Blaivas need not be an expert on product warnings per se. Rather, as a urologist, Dr. Blaivas is qualified to testify about the risks of implanting the TVT–O and whether those risks were adequately expressed on the TVT–O's IFU. Dr. Blaivas is qualified to render an opinion as to the completeness and accuracy of Ethicon's warning and—it follows from that—the extent to which any inaccuracies or omissions could either deprive a reader or mislead a reader of what the risks and

---

[9] *See Rose v. Boston Scientific Corp.*, 2020 WL 4195470 at *1 (W.D. Wash. July 21, 2020) (citing *Huskey*, 29 F. Supp. 3d at 704); *Edwards v. Ethicon, Inc.*, 2014 WL 3361923, at *13 (S.D.W. Va. July 8, 2014) (citing *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 2000 WL 876900, at *11 (E.D. Pa. June 20, 2000), which the *Huskey* Court cited).

> benefits of the TVT–O was when the warnings were published. [Cit.]

29 F. Supp. 3d 691, 719 (S.D. W. Va. 2014) (citations and quotations omitted).  In *Rose*, the court applied *Huskey*'s reasoning to conclude that a surgeon may opine on the risks of a product, whether an IFU adequately communicates those risks in a warning, and, therefore, whether a warning regarding those risks is "complet[e] and accura[te]." 2020 WL 4195470, at *1.  The *Rose* Court distinguished this permissible testimony from inadmissible opinions which "stray[ ] into regulatory interpretation."  *Id.*  Accordingly, the Court finds that Veronikis may testify whether the IFU completely and accurately communicates the risks of Gynemesh PS, and whether an incompletely or inaccurately communicated risk "either deprive[d] a reader or mislead a reader of . . . the risks and benefits[.]"  *In re Diet Drugs*, 2000 WL 876900, at *11. However, to the extent he opines that the IFU is incomplete or inaccurate pursuant to some regulatory standard, or that Ethicon was "obligated" to warn of a certain risk, that testimony is inadmissible.  *See Godreau-Rivera*, 598 F. Supp. 3d at 211.[10]  Given this distinction, Ethicon's request

---

[10]  Fields cites *Jensen v. Amer. Med. Sys., Inc.*, 2021 WL 6139631, *4 (E.D. Wash. 2021), which found that an expert's "experience in removing polypropylene transvaginal mesh devices and performing revision and excision procedures qualify

to exclude Veronikis' opinion regarding what "should be included in an IFU" is **GRANTED**, in part, and **DENIED**, in part.  Doc. 141.

Ethicon also challenges Veronikis' opinion that "[d]espite having safer, equally as effective, alternative materials [for Gynemesh PS], Ethicon used the polypropylene mesh that is known to contract and degrade in the human body."  Doc. 141-1 at 19 (Veronikis' report); doc. 141 at 4 (Ethicon's challenge).  It argues that the opinion is not reliable because he "merely cited four internal Ethicon documents that discuss two alternative materials—PVDF and Pronova", doc. 141 at 4, and that the content of those documents is an insufficient basis for his opinion. *See* doc. 148 at 4-5 (Ethicon clarifies its "reliability" challenge); *see also* doc. 141-1 at 33-34 (in footnote 22, Veronikis quotes the relevant "Ethicon documents" discussing PVDF and Pronova).

The Southern District of California recently rejected Ethicon's similar argument in a case remanded from the MDL Court.  *See Parks v. Ethicon, Inc.*, 2022 WL 1812299, at *4 (S.D. Cal. June 2, 2022) (citing

---

him to opine on the design or adequacy of the warnings of polypropylene transvaginal mesh devices."  However, in *Bell v. Ethicon Inc.*, another transferor court in this MDL recognized that the expert at issue in *Jensen* "has consulted on product warnings in the past, has served on another company's scientific advisory committee that worked on similar documents, and has reviewed numerous IFU for mesh products."  2021 WL 1111071, at *8 (S.D. Tex. Mar. 23, 2021).

*Acosta v. Ethicon, Inc.*, CV20-5992, at 3, 5 (C.D. Cal. Dec. 13, 2021)).  In *Parks*, the court admitted Veronikis' alternative design testimony when he "opine[d]—with references to Defendants' internal documents, other studies, or his own observations—that certain properties of polypropylene mesh can create problems and that Defendants at one point proposed 'to use PVDF or PRONOVA as a more stable filament.' " 2022 WL 1812299, at *4.  Veronikis' apparently identical report in this case[11] is based on those same sources, *see* doc. 141-1 at 6-8, 18-21, and the Court agrees with the *Parks* Court's persuasive reasoning.  Ethicon's request to exclude Veronikis' alternative design opinion is **DENIED**.  Doc. 141, in part.

## CONCLUSION

For the foregoing reasons, Ethicon's Motion to Exclude Certain Opinions of Fields' Expert Klosterhalfen is **DENIED**.  Doc. 140.  Its Motion to Exclude Certain Opinions of Plaintiff's General Experts is **DISMISSED** as moot, in part, to the extent it seeks to exclude Guelcher's

---

[11] *Compare* doc. 141-1 at 6-8, 18-21, *with Parks v. Ethicon, Inc.*, CV320-989, doc. 60-1 at 40-42, 52-55 (S.D. Cal. May 26, 2020).

testimony, and **GRANTED**, in part, and **DENIED**, in part to the extent it seeks to exclude Veronikis' testimony.  Doc. 141.

    **SO ORDERED**, this 20th day of January, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA